IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| VERNITA S.,[1]<br><br>                Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Commissioner (Acting) of the Social Security Administration,<br><br>                Defendant. | Case No. 4:20-cv-00025-JMK<br><br>**DECISION AND ORDER** |

This matter comes before the Court for judicial review of the Social Security Administration's denial of her application for social security benefits. After reviewing the agency's decision, the administrative record, and the parties' briefs, the Court concludes that the plaintiff's request for relief will be granted.

## I. BACKGROUND

Plaintiff Vernita S. was born in 1965 and was 51 years old on the alleged disability onset date. She applied to the Social Security Administration (SSA) for supplemental security income (SSI) benefits under Title XVI of the Social Security Act on December 27, 2016, claiming

---

[1] Plaintiff's name is partially redacted per Rule 5.2(c) of the Federal Rules of Civil Procedure and the recommendation of the Judicial Conference's Committee on Court Administration and Case Management. *See* Memorandum, Judicial Conference of the United States, Committee on Court Administration and Case Management (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

disability beginning on June 27, 2016.[2] The SSA denied Plaintiff's application on April 11, 2018,[3] and she requested a hearing before an administrative law judge (ALJ).[4] Plaintiff appeared, with counsel, and testified at a hearing before ALJ Cecilia LaCara in Fairbanks, Alaska, on April 3, 2019.[5] On May 23, 2019, the ALJ issued an unfavorable decision.[6] The SSA Appeals Council denied Plaintiff's request for review on April 9, 2020.[7]

On June 15, 2020, Plaintiff filed suit in this Court seeking judicial review of the ALJ's decision.[8] The Commissioner answered Plaintiff's complaint on March 1, 2021.[9] Plaintiff filed her opening motion and brief on May 24, 2021,[10] the Commissioner filed an opposing brief on June 23, 2021,[11] and Plaintiff filed a reply brief on July 7, 2021.[12] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

## II. DISABILITY DETERMINATION

The Social Security Act provides for the payment of SSI benefits to people who are age 65 or older, blind, or disabled and do not otherwise have insured status under the Act.[13] The Act defines "disabled" as "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[14] The Act further provides:

---

[2] Administrative Record (A.R.) 222–26.
[3] A.R. 89–95.
[4] A.R. 96–98.
[5] A.R. 32–68.
[6] A.R. 18–28.
[7] A.R. 1–6.
[8] Docket 1.
[9] Docket 24.
[10] Docket 28.
[11] Docket 31.
[12] Docket 32.
[13] 42 U.S.C. § 1381a.
[14] 42 U.S.C. § 1382c(a)(3)(A).

*Vernita S. v. Kijakazi*  Case No. 4:20-cv-00025-JMK
Decision and Order  Page 2
Case 4:20-cv-00025-JMK   Document 33   Filed 03/15/22   Page 2 of 13

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[15]

SSA regulations establish a five-step process for determining disability within the meaning of the Act.[16] At Steps One through Four, claimants bear the burden of making a *prima facie* showing of their disability.[17] If a claimant does so, the burden of proof then shifts to the SSA at Step Five.[18]

The five steps, and the ALJ's findings in this case, are as follows:

**Step One.** Determine whether the claimant is engaged in "substantial gainful activity." If she is, the claimant is deemed not disabled. If not, the evaluation proceeds to Step Two.[19] *In the present case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 27, 2016.*[20]

**Step Two.** Determine whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments. A "severe" impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of

---

[15] 42 U.S.C. § 1382c(a)(3)(B).
[16] 20 C.F.R. § 416.920(a)(4).
[17] 20 C.F.R. § 416.912(a)(1).
[18] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).
[19] 20 C.F.R. § 416.920(a)(4)(i).
[20] A.R. 20.

*Vernita S. v. Kijakazi*     Case No. 4:20-cv-00025-JMK
Decision and Order     Page 3
Case 4:20-cv-00025-JMK    Document 33    Filed 03/15/22    Page 3 of 13

impairments must satisfy the twelve-month duration requirement.[21] *In the present case, the ALJ found that Plaintiff had the following severe impairments: anemia, liver disease, chronic pain, depression, and post-traumatic stress disorder.*[22]

**Step Three.** Determine whether the impairment, or combination of impairments, meets or equals the severity of any of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1, precluding substantial gainful activity. If the impairment is the equivalent of any of the listed impairments and meets the duration requirement, the claimant conclusively is presumed disabled. If not, the evaluation goes to Step Four.[23] *In the present case, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.*[24]

Before going to Step Four, the ALJ assesses and makes a finding on the claimant's residual functional capacity (RFC).[25] A claimant's RFC is the most the claimant can do on a sustained basis despite the physical and mental limitations from her impairments, including impairments that are not severe.[26] Once determined, the RFC is used at both Step Four and Step Five. *In the present case, the ALJ found Plaintiff's RFC to be light work (as defined in 20 C.F.R. § 416.967(b)), with the following restrictions: sitting for seven hours and standing or walking for five hours out of an eight-hour day; frequently push and pull with the bilateral upper extremities; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; frequently balance and occasionally stoop, kneel, crouch, or crawl; frequently reach with the bilateral upper extremities; frequently reach overheard with the left arm but only occasionally*

---

[21] 20 C.F.R. §§ 416.920(a)(4)(ii) & (c).
[22] A.R. 20.
[23] 20 C.F.R. § 416.920(a)(4)(iii).
[24] A.R. 20–22.
[25] 20 C.F.R. § 416.920(e).
[26] 20 C.F.R. § 416.945(a).

*Vernita S. v. Kijakazi*  Case No. 4:20-cv-00025-JMK
Decision and Order  Page 4
Case 4:20-cv-00025-JMK   Document 33   Filed 03/15/22   Page 4 of 13

*reach overhead with the right arm; avoid exposure to unprotected heights and heavy machinery; and avoid moderate exposure to operational control of moving machinery. The ALJ also found Plaintiff's RFC was limited to performing simple, routine, and repetitive tasks in a low-stress work environment (defined as occasional changes to work setting) with no access to intoxicating substances.*[27]

**Step Four.** Determine whether the claimant can perform past relevant work.[28] The ALJ makes this determination by comparing the claimant's RFC with the "physical and mental demands" of his past work,[29] either as actually performed by the claimant in a past job or as generally performed in the national economy.[30] If the claimant can perform such work, she is deemed not to be disabled.[31] Otherwise, the evaluation moves to Step Five. *In the present case, the ALJ determined that Plaintiff was unable to perform any of her past relevant work.*[32]

**Step Five.** Determine whether the claimant can perform other work in the national economy considering her age, education, and work experience, and her RFC. If she can, the claimant is not disabled. If she cannot, the claimant is considered disabled.[33] *In the present case, the ALJ determined that there were significant numbers of jobs in the national economy that Plaintiff could perform and therefore concluded that Plaintiff was not disabled.*[34]

---

[27] A.R. 22–25.
[28] 20 C.F.R. § 416.920(a)(4)(iv).
[29] 20 C.F.R. §§ 416.920(f).
[30] S.S.R. 82-61 (Soc. Sec. Admin. Jan. 1, 1982), 1982 WL 31387 at *2. Social Security Rulings are "binding on all components of the Social Security Administration." *Pinto v. Massanari*, 249 F.3d 840, 844 n.3 (9th Cir. 2001). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) (quoting *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005)).
[31] 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv).
[32] A.R. 26.
[33] 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).
[34] A.R. 27–28.

*Vernita S. v. Kijakazi*  Case No. 4:20-cv-00025-JMK
Decision and Order  Page 5
Case 4:20-cv-00025-JMK   Document 33   Filed 03/15/22   Page 5 of 13

## III. STANDARD OF REVIEW

When reviewing denials of Social Security disability benefits, courts may overturn the SSA's decision only if it was not supported by substantial evidence or was based on legal error.[35] In this context, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be more than a mere scintilla, but may be less than a preponderance."[36]

In reviewing the SSA's decision, the court considers the evidence in its entirety, weighing both the evidence that supports and detracts from the ALJ's decision.[37] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[38] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [she] did not rely."[39]

An ALJ's decision will not be reversed if it is based on harmless error.[40] An error in a disability decision is harmless if it "is inconsequential to the ultimate nondisability determination, or . . . despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[41]

## IV. DISCUSSION

Plaintiff alleges that the ALJ erred by (1) rejecting the opinion of Plaintiff's treating physician without sufficient rationale, and (2) discrediting Plaintiff's symptom testimony without

---

[35] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).
[36] *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012)).
[37] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).
[38] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).
[39] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).
[40] *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).
[41] *Id.* (internal quotation marks and citations omitted).

*Vernita S. v. Kijakazi*  Case No. 4:20-cv-00025-JMK
Decision and Order  Page 6
Case 4:20-cv-00025-JMK   Document 33   Filed 03/15/22   Page 6 of 13

sufficient rationale. The Commissioner disputes Plaintiff's arguments and asks the Court to affirm the ALJ's decision.

The Court considers each of Plaintiff's arguments in turn.

## A. The ALJ's Assessment of Plaintiff's Treating Physician's Opinion

Plaintiff alleges that the ALJ erred at Step Three by rejecting the opinion of Plaintiff's treating physician, Dr. Peter Frank, and relying on the opinion of SSA non-examining medical expert Dr. Jack LeBeau when formulating Plaintiff's RFC. Specifically, Plaintiff alleges that the ALJ erred by giving "no specific nor legitimate reasons for rejecting the opinion of Plaintiff's treating source" and by giving more weight to the SSA's "non-examining medical experts" instead. Plaintiff alleges that if the ALJ had not erroneously discounted Dr. Frank's opinion, she would have included greater limitations when formulating Plaintiff's RFC.[42]

The Commissioner disputes Plaintiff's assertion that the ALJ "rejected" Dr. Frank's medical opinion and maintains that the ALJ's RFC formulation was substantially consistent with Dr. Frank's opinion.[43] The Commissioner also maintains that the ALJ reasonably gave greater weight to Dr. LeBeau's medical opinion.[44]

Because Plaintiff filed her application for benefits before March 27, 2017, her claim is not subject to the SSA's new regulations regarding the evaluation of treating physicians' opinions.[45] Under the older regulations, the SSA generally "give[s] more weight" to the medical opinions of examining and treating sources.[46] And it gives "controlling weight" to treating sources' opinions as long as they are "well-supported by medically acceptable clinical and

---

[42] Docket 28 at 12–17.
[43] Docket 31 at 10–11.
[44] *Id.* at 12–14.
[45] Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Soc. Sec. Admin. Jan. 18, 2017), *codified at* 20 C.F.R. §§ 404.1520c & 416.920c.
[46] 20 C.F.R. § 416.927(c)(1)-(2).

laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record."[47] Even if the ALJ does not give a treating source's opinion controlling weight, the opinion is "still entitled to deference" and must be weighed under the factors set out in 20 C.F.R. § 416.927(c)(2)–(6).[48]

Controlling Ninth Circuit precedent holds that these regulations require that "[t]o reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."[49] Even when a treating physician's opinion is contradicted by another physician's opinion, "an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."[50] "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings."[51] In so doing, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician."[52]

In this case, the ALJ's rationale for rejecting Dr. Frank's opinion was not sufficient. Dr. Frank opined that Plaintiff's "cervical and lumbar spondylosis" would limit her to occasional sitting and walking, infrequent standing, stopping, and climbing, occasional lifting of five pounds, infrequent lifting of six to twenty pounds, and never lifting more than twenty pounds.[53] He limited

---

[47] 20 C.F.R. § 416.927(c)(2).
[48] *Orn v. Astrue*, 495 F.3d 625, 631–32 (9th Cir. 2007) (quoting S.S.R. 96-2p (Soc. Sec. Admin. July 2, 1996), 61 Fed. Reg. 34490, 34491, *available at* 1996 WL 362211). *See also id.* at 632 (quoting S.S.R. 96-2p, 61 Fed. Reg. at 34491) ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").
[49] *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).
[50] *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Bayliss*, 427 F.3d at 1216).
[51] *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).
[52] *Id.* (alteration and emphasis in original) (quoting *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)).
[53] A.R. 559–60.

*Vernita S. v. Kijakazi* Case No. 4:20-cv-00025-JMK
Decision and Order Page 8
Case 4:20-cv-00025-JMK Document 33 Filed 03/15/22 Page 8 of 13

Plaintiff's use of her extremities at work to frequent fine hand manipulation, occasional gross hand manipulation, and infrequent raising of both her left and right arms above her shoulders.[54] He opined that Plaintiff's pain would be "moderate" and would cause her to be off task 60 percent of the time, that she would have a medical need to lie down three or more times per day, and that her impairments would cause her to miss five or more workdays per month.[55] But the ALJ assigned Dr. Frank's opinion "only some weight."[56] Instead, she gave "significant weight" to the opinion of non-examining expert Dr. LeBeau, who opined that Plaintiff's impairments were much milder than Dr. Frank had opined.[57] Consequently, the ALJ formulated an RFC that omitted many of the limitations in Dr. Frank's opinion.[58]

       The ALJ's only justification for discrediting Dr. Frank's opinion was that "[o]verall, the evidence of record does not support the extreme level of limitation assigned by [Dr. Frank]."[59] She gave no further explanation for her decision to give Dr. Frank's opinion reduced weight. Her decision did not point to any specific evidence in the record with which Dr. Frank's opinion was inconsistent, nor did she evaluate Dr. Frank's opinion under any of the 20 C.F.R. § 416.927(c) factors. The ALJ provided no explanation for her departure from Dr. Frank's opinion on Plaintiff's limitations, such as her conclusions that Plaintiff could sit for seven hours, stand for five hours, frequently reach overhead with her left arm, and occasionally reach overherad with her right arm—all of which Dr. Frank had limited to "occasional" or "infrequent."[60] Nor did she explain her omission of other limitations in Dr. Frank's opinion from

---

[54] *Id.*
[55] *Id.*
[56] A.R. 26.
[57] *Id.*
[58] A.R. 22–23.
[59] A.R. 26.
[60] In this context, "occasionally" means "up to 1/3 of an 8-hour workday" and "infrequently" means "very little if at all on some days." A.R. 559.

Plaintiff's RFC, such as Plaintiff's medical need to lie down three or more times per day.[61] This failed to provide the "specific and legitimate reasons that are supported by substantial evidence" needed to reject Dr. Frank's opinion.[62]

The Commissioner's assertion that the ALJ did not "reject" Dr. Frank's opinion, but merely "interpreted" it, is unavailing. The Commissioner cites *Orteza v. Shalala*[63] for the distinction between "discrediting" and "interpreting" treating sources' opinions.[64] But *Orteza* supports Plaintiff's argument, not the Commissioner's. In *Orteza*, the Ninth Circuit held that an ALJ had only "interpreted" a treating source's opinion, not "discredited" it, when he concluded that the treating source's opinion had used the term "sedentary work" in a general sense, not as a legal term of art under the Social Security regulations.[65] Consequently, the court concluded that the ALJ did not need clear and convincing reasons to formulate an RFC that did not limit the claimant to "sedentary" work.[66]

Unlike the ALJ in *Orteza*, the ALJ in this case clearly "discredited" Dr. Frank's opinion. The parties here have not contended that Dr. Frank's opinion used any technical legal terms in a non-technical sense, or that the phrasing in his opinion meant anything other than the express physical limitations he described. Moreover, the ALJ wrote in her decision that she gave "significant weight" to Dr. LeBeau's opinion but "only some weight" to Dr. Frank's, and she formulated an RFC with limitations that are substantially lighter than those in Dr. Frank's opinion.[67] By any objective measure, the ALJ both explicitly and implicitly rejected Dr. Frank's

---

[61] *See* A.R. 24–26.
[62] *Revels*, 874 F.3d at 654 (quoting *Bayliss*, 427 F.3d at 1216).
[63] 50 F.3d 748 (9th Cir. 1995).
[64] Docket 31 at 10–12.
[65] *Orteza*, 50 F.3d at 750.
[66] *Id.* at 750–51.
[67] A.R. 22, 26.

*Vernita S. v. Kijakazi*     Case No. 4:20-cv-00025-JMK
Decision and Order     Page 10
Case 4:20-cv-00025-JMK   Document 33   Filed 03/15/22   Page 10 of 13

opinion. She was therefore required to provide "specific and legitimate reasons . . . supported by substantial evidence" for her decision to do so.[68] And, as described earlier, she failed to give those reasons.

In sum, the ALJ's lack of explanatory detail regarding her rejection of Dr. Frank's opinion failed to provide the "specific and legitimate reasons . . . supported by substantial evidence" that are required when an ALJ rejects a treating source's opinion, even when other physicians' opinions contradict it. Accordingly, the Court concludes that the ALJ's decision on this point was not supported by substantial evidence. Given the possibility that the ALJ may have formulated a different RFC had she properly evaluated Dr. Frank's opinion, the Court concludes that her failure to do so was not harmless error and requires remand.[69]

**B.      The ALJ's Evaluation of Plaintiff's Symptom Testimony**

Plaintiff alleges that the ALJ did not provide sufficient rationale for discrediting Plaintiff's testimony about the severity of her symptoms.[70] The Commissioner maintains that the ALJ reasonably discredited Plaintiff's testimony because it was contradicted by the medical evidence in the record, by Plaintiff's own testimony about her daily activities, and by Plaintiff's treatment history.[71]

ALJs must evaluate Social Security claimants' testimony about their symptoms using a two-step process.[72] First, the ALJ must determine whether the claimant has shown

---

[68] *Revels*, 874 F.3d at 654 (quoting *Bayliss*, 427 F.3d at 1216).
[69] For example, at Plaintiff's hearing, vocational expert William Weiss testified that a person who had four or more absences from work per month would be unable to maintain any competitive employment in the national economy. A.R. 66–67. Dr. Frank's opinion was that Plaintiff would have five or more. A.R. 559.
[70] Docket 28 at 18–21.
[71] Docket 31 at 4–10.
[72] *Trevizo*, 871 F.3d at 678. *See also* S.S.R. 16-3p (Soc. Sec. Admin. Oct. 25, 2017), 82 Fed. Reg. 49462, 2017 WL 5180304.

*Vernita S. v. Kijakazi*                                                                  Case No. 4:20-cv-00025-JMK
Decision and Order                                                                                          Page 11
Case 4:20-cv-00025-JMK   Document 33   Filed 03/15/22   Page 11 of 13

"objective medical evidence of an underlying impairment which reasonably could be expected to produce the pain or other symptoms alleged."[73]  Then, if the claimant has satisfied the first step and there is no evidence of malingering, the ALJ can only reject or discredit the claimant's symptom testimony by providing "specific, clear and convincing reasons for doing so."[74]  The "specific, clear and convincing" standard is "the most demanding required in Social Security cases"[75] and is "not an easy requirement to meet."[76]  In her evaluation, the ALJ must specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints."[77]

In this case, the ALJ's rationale for rejecting Plaintiff's symptom testimony was insufficient.  The ALJ concluded that Plaintiff's "allegations are not consistent with the medical record."  She found that Plaintiff "had intact muscle strength, sensation and reflexes," despite her "chronic pain, her somewhat limited range of motion, and her variable gait."  She also found that "[Plaintiff]'s treatment has been very conservative using largely over-the-counter and prescription medication" and that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual."  Lastly, she found that Plaintiff's "alleged limitations are not fully supported by her reported activities in the medical and other evidence of record."[78]

But the ALJ never specified which aspects of Plaintiff's testimony she found not credible.  Her findings are not clearly tied to any of Plaintiff's symptoms or the severities thereof, and it is not clear how her discrediting of Plaintiff's testimony impacted her RFC formulation.  The

---

[73] *Id.* (quoting *Garrison*, 759 F.3d at 1014–15).
[74] *Id.*
[75] *Garrison*, 759 F.3d at 1015.
[76] *Trevizo*, 871 F.3d at 678–79.
[77] *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).
[78] A.R. 24–25.

ALJ's failure to identify which portions of Plaintiff's testimony unmoors her findings from any medical evidence that might have supported her conclusion that Plaintiff's testimony was not credible. Such a failure constitutes legal error.[79] Given the possibility that the ALJ might have formulated a different RFC for Plaintiff had she not done so, the Court concludes that her error was not harmless and requires remand.

## V. CONCLUSION

Having reviewed the ALJ's decision, the administrative record, and the parties' briefs, the Court concludes that the ALJ committed legal error by rejecting Dr. Frank's treating source opinion without sufficient justification and by failing to provide sufficient rationale for finding Plaintiff's symptom testimony not credible. Given the possibility that these errors impacted the RFC the ALJ formulated for Plaintiff, the Court concludes that they were not harmless error and requires remand. Because essential factual issues in this case remain unresolved, the Court concludes that the proper remedy is reversal and remand to the SSA for further proceedings, including a new hearing and decision.[80]

For these reasons, Plaintiff's request for relief is GRANTED and this matter is REMANDED for further proceedings consistent with this order. The Clerk of Court is directed to enter a final judgment accordingly.

IT IS SO ORDERED this 15th day of March, 2022, at Anchorage, Alaska.

/s/ Joshua M. Kindred
JOSHUA M. KINDRED
United States District Judge

---

[79] *Brown-Hunter*, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.").
[80] *See, e.g.*, *Garrison*, 759 F.3d at 1019–20.

*Vernita S. v. Kijakazi* Case No. 4:20-cv-00025-JMK
Decision and Order Page 13
Case 4:20-cv-00025-JMK   Document 33   Filed 03/15/22   Page 13 of 13